UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| TIMOTHY G. HENSON, <br><br> Plaintiff, <br><br> v. <br><br> PACITA GOLDEN, CHRISTINE VORRIER, and DYLAN CABANAW, <br><br> Defendants. | CAUSE NO. 3:24-CV-855-GSL-AZ |

OPINION AND ORDER

Timothy G. Henson was a prisoner when he filed this complaint, but he has since been released. ECF 1, ECF 6. Because he filed this case as a prisoner, 28 U.S.C. § 1915A requires that the court review the merits of the complaint and dismiss it if the action is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief. "A document filed *pro se* is to be liberally construed, and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quotation marks and citations omitted). Nevertheless, under 28 U.S.C. § 1915A,

Henson had a prison job as a sanitation worker at Indiana State Prison's minimum-security unit. At the end of January 2024, Officer Pacita Golden became his supervisor. Henson alleges that he and the other sanitation workers were not paid in April 2024. He spoke to Golden several times about receiving his back wages, and she

told him that she had nothing to do with the process of paying offenders their state pay. Instead, she referred him either to Corrections Officer Thomas Frazier, who was Henson's former supervisor before that officer was reassigned to the maximum-security unit, or to Unit Team Manager Christine Vorrier. Officer Golden claimed she had not received the proper training as sanitation supervisor and was not given a password for the prison's offender payment program.

Henson alleges he then contacted UTM Vorrier about his missing wages, and she told him that Officer Golden "dropped the ball" in getting the sanitation workers paid, and it was Officer Golden's responsibility to address any issues involving sanitation state pay. ECF 1 at 5.

Henson next alleges that on the morning of June 4, 2024, Officer Golden entered Henson's dorm, screaming at the offenders about a piece of cake that had been dropped on the steps and the dayroom floor. She continued to berate the offenders present with vulgar language for not cleaning up after themselves. After this, another offender approached her to ask about the missing pay from April 2024. This allegedly caused her to lash out and shout, "I am not responsible for paying you motherfuckers." ECF 1 at 5. The other offender turned around and walked away towards his bed.

At this point, Henson alleges that Officer Golden, unprompted, turned her attention to him, who was just sitting near his bed watching the situation. She stated to him, "You motherfuckers don't really want to know what is on my mind." ECF 1 at 6. Henson responded, "Why don't you tell us what is really on your mind, and I will tell you what is on mine." *Id.* She began what Henson describes as a "verbal assault" on

2

him, laced with profanity. *Id.* She reportedly told him, "I am not responsible for paying you state pay, and you are a slave to DOC motherfucker." *Id.* This made Henson stand up and say, "I am not a slave to DOC and slavery was over a long time ago." *Id.* He then asked Officer Golden to leave the dormitory, in an attempt to de-escalate the situation. She refused. Officer Golden called Henson a "motherfucker" and a "bitch" and stated, "You cannot tell me what to do." *Id.* She then called over the radio for an officer to report to the dormitory.

Lieutenant Dylan Cabanaw arrived at the dormitory. Henson alleges that another officer present, Corrections Officer John Karr, had witnessed the events and told the lieutenant that Officer Golden had disrespected all the offenders and their mothers with her verbal assault, that she verbally assaulted Henson, and that Henson did nothing wrong and was intentionally targeted. Lieutenant Cabanaw saw Officer Golden continuing her verbal assault on Henson. Lieutenant Cabanaw requested that she leave the dormitory. She did, only to return seconds later to continue yelling at Henson. Lieutenant Cabanaw requested again that she leave.

When Lieutenant Cabanaw left the dormitory, he ordered Officer Golden to issue a Report of Conduct against Henson. Henson complains that Lieutnanet Cabanaw, as Officer Golden's superior officer, never reprimanded her for her behavior.

The next day, on June 5, 2024, Henson alleges that his case manager, Kyle Moore, called him to his office for a Classification Hearing and asked him to sign an Offender Evaluation and Performance Report that Officer Golden had prepared. The report stated that Officer Golden was terminating him as a sanitation worker because he was

3

uncontrollable, would not de-escalate, and used vulgarity. He had been employed as a sanitation worker since December 2019 with no previous complaints or bad performance evaluations.

Henson refused to sign the report because he was entitled to a hearing to contest the report's findings. He provided Case Manager Moore with the names of his witnesses to interview and asked that he review the video surveillance of the incident. That same day, Case Manager Moore reported to Henson that he spoke with Officer Karr, who explained that Henson was targeted by Officer Golden, she disrespected him, and he did nothing wrong to deserve the verbal assault. Officer Karr reported that Officer Golden was the aggressor in the matter. Case Manager Moore did not speak to the witnesses that Henson had designated, did not hold a Classification Hearing, did not allow Henson another opportunity to sign the Offender Evaluation and Performance Report, and did not provide him with a copy of the report.

On June 5, 2024, UTM Vorrier terminated Henson from his job as a sanitation worker and removed him from the count letter. He was not allowed to apply for another job at the prison before his release about four months later on October 17, 2024. *See* ECF 11-1 at 2 (release date). Henson sent Request for Interview Slips to UTM Vorrier, Warden Ron Neal, and Corrections Major Douglas Wardlow on June 7, 2024, about his termination, but none of them responded. He sues Officer Golden, Lieutenant Cabanaw, and UTM Vorrier for terminating him from his job as a sanitation worker in retaliation for filing offender grievances and complaints.

Henson wisely does not challenge the actual termination itself, as he has no liberty or property interest in a prison job, and being deprived of a job does not violate his procedural due process rights. *DeWalt v. Carter*, 224 F.3d 607, 613 (7th Cir. 2000). The First Amendment, nonetheless, prohibits some actions taken by state officials that are not, by themselves, illegal, but cannot be taken in retaliation for the exercise of protected First Amendment activity. *See Bridges v. Gilbert*, 557 F.3d 541, 552 (7th Cir. 2009) ("Even though some of these allegations would likely not be actionable in and of themselves, if the acts were taken in retaliation for the exercise of a constitutionally protected right, then they are actionable under § 1983."). To proceed on a claim for retaliation under the First Amendment, Henson must plausibly allege "(1) that he engaged in protected First Amendment activity; (2) that an adverse action was taken against him, and (3) that his protected conduct was at least a factor that motivated the adverse action." *Adams v. Reagle*, 91 F.4th 880, 887 (7th Cir. 2024).

Here, Henson's oral complaints to Officer Golden about his missing pay are protected First Amendment activity, as long as his complaints were done in a manner that "is not inconsistent with legitimate penological interests." *Bridges v. Gilbert*, 557 F.3d 541, 551 (7th Cir. 2009). He does not, however, identify any grievance he filed that predated his termination, so the court focuses only on the oral complaints about his lost wages as the protected First Amendment activity. Additionally, being fired from a prison job qualifies as an adverse action, as losing one's source of income is an action that "would likely deter a person of ordinary firmness from continuing to engage in protected activity." *Douglas v. Reeves*, 964 F.3d 643, 646 (7th Cir. 2020) (quotation marks

5

omitted). However, the allegations in the complaint do not allow the court to infer that any defendant other than Officer Golden could have had the required motivation to be held liable.

Henson alleges that Officer Golden, Lieutenant Cabanaw, and UTM Vorrier are all responsible for the alleged retaliatory termination. The motivation involving Officer Golden is straightforward, given that she is the one Henson complained to about his lost wages, and she is the one who wrote the poor performance evaluation that resulted in his termination. He may proceed against her.

The causation involving UTM Vorrier, however, is too attenuated to proceed. Henson did ask her about his lost wages. But the complaint alleges she terminated him on the basis of the poor performance review, and does not allege she had any role in determining the merits of that review or any discretion to retain him despite the poor review. Therefore, it is not reasonable to infer that Henson's earlier complaint about his lost wages motivated her to terminate Henson from his job.

Finally, there are no allegations that Lieutenant Cabanaw was privy to Henson's complaints about his lost wages, leaving no basis to link his actions to Henson's complaints. Furthermore, Henson's complaint that Lieutenant Cabanaw did not reprimand Officer Golden is of no legal significance, as he has no right to an investigation into already completed behavior. *See Whitlock v. Brueggemann*, 682 F.3d 567, 588 (7th Cir. 2012) (citing *Town of Castle Rock v. Gonzales*, 545 U.S. 748 (2005)) ("There is no affirmative duty on police to investigate."); *Rossi v. City of Chicago*, 790 F.3d 729, 735 (7th Cir. 2015) ("We note at the outset that Rossi does not have a

constitutional right to have the police investigate his case at all, still less to do so to his level of satisfaction."). Therefore, Henson may proceed against only Officer Golden on a retaliation claim and not against Lieutenant Cabanaw or UTM Vorrier.

For these reasons, the court:

(1) GRANTS Timothy G. Henson leave to proceed against Officer Pacita Golden in her individual capacity for compensatory and punitive damages for writing a poor performance evaluation of him that resulted in his termination from his prison job as a sanitation worker in June 2024 in retaliation for oral complaints about lost wages in violation of the First Amendment;

(2) DISMISSES all other claims;

(3) DISMISSES Christine Vorrier and Dylan Cabanaw;

(4) DIRECTS the clerk, under 28 U.S.C. § 1915(d), to request Waiver of Service from (and if necessary, the United States Marshals Service to use any lawful means to locate and serve process on) Officer Pacita Golden at the Indiana Department of Correction, with a copy of this order and the complaint (ECF 1);

(5) ORDERS the Indiana Department of Correction to provide the full name, date of birth, and last known home address of any defendant who does not waive service if it has such information; and

(6) ORDERS, under 42 U.S.C. § 1997e(g)(2), Officer Pacita Golden to respond, as provided for in the Federal Rules of Civil Procedure and N.D. Ind. L.R. 10-1(b), only to the claims for which the plaintiff has been granted leave to proceed in this screening order.

SO ORDERED on May 22, 2025

/s/Gretchen S. Lund
JUDGE
UNITED STATES DISTRICT COURT